THERESE M. LAWLESS (CA Bar # 127341)*
EMILY S. McGRATH (CA Bar # 289624)*
SINCLAIRE M. PARER (CA Bar # 346148)*
**LAWLESS, LAWLESS & McGRATH**
354 Pine Street, Fourth Floor
San Francisco, CA 94104
Telephone:  (415) 391-7555
Facsimile:  (415) 391-4228
tlawless@lawlesssf.com
emcgrath@lawlesssf.com
sparer@lawlesssf.com

**pro hac vice* application forthcoming

*Attorneys for Plaintiffs*
JESSICA BLAIR, ANDREA BRANDON,
CORISSA BUSSE, SACHIKO GRABER,
and ALORA JONES

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| JESSICA BLAIR, ANDREA BRANDON, CORISSA BUSSE, SACHIKO GRABER, and ALORA JONES,<br><br>Plaintiff,<br><br>vs.<br><br>THE NATURE CONSERVANCY, DOUGLAS SHAW, and DOES 1 through 30, inclusive,<br><br>Defendants. | Case No. 24-cv-01570<br><br>COMPLAINT FOR DAMAGES DEMAND FOR JURY TRIAL<br><br>SEX HARASSMENT; SEX DISCRIMINATION; RETALIATION; INTRUSION UPON SECLUSION; APPROPRIATION; FALSE LIGHT; DEFAMATION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT RETENTION AND SUPERVISION |

///

///

-1-
COMPLAINT FOR DAMAGES

## I. NATURE OF THE CASE

1.      This action is brought by PLAINTIFFS JESSICA BLAIR, ANDREA BRANDON, CORISSA BUSSE, SACHIKO GRABER, and ALORA JONES, all of whom are either current or former employees of DEFENDANT THE NATURE CONSERVANCY (hereinafter referred to as "TNC"). PLAINTIFFS bring this action for violations of federal and state laws, including those prohibiting: sex harassment; sex discrimination; retaliation; invasion of privacy torts including intrusion upon seclusion, appropriation, and false light; defamation; intentional infliction of emotional distress; negligent infliction of emotional distress; and DEFENDANT TNC's negligent retention and supervision of DEFENDANT DOUGLAS SHAW.

2.      PLAINTIFFS all worked as employees in various capacities for DEFENDANT TNC's Minnesota, North Dakota, and South Dakota Chapter (hereinafter referred to as the "Tri-State Chapter"), the headquarters of which is based in Minneapolis, Minnesota. PLAINTIFFS primarily worked in Minnesota and also in South Dakota. DEFENDANT DOUGLAS SHAW was the Associate Director of DEFENDANT TNC's Tri-State Chapter during PLAINTIFFS' employment and worked out of the Tri-State Chapter headquarters in Minneapolis, Minnesota. Each PLAINTIFF was in a subordinate position to DEFENDANT SHAW during his tenure as the Associate Director of the Tri-State Chapter. DEFENDANT SHAW used his position of power and authority over PLAINTIFFS to regularly take photos of PLAINTIFFS in the workplace, while on work-related trips, and during work-related events. DEFENDANT TNC encouraged DEFENDANT SHAW to take photos of PLAINTIFFS and other employees during the course of their employment. DEFENDANT SHAW abused his position of power over

PLAINTIFFS by requesting that they become his friends on social media, which they did not feel comfortable declining due to his position as Associate Director of the Tri-State Chapter and the authority he had over them. DEFENDANT SHAW's continued abuse occurred when he used numerous photos of PLAINTIFFS for his own and others' sexual gratification without PLAINTIFFS' consent. DEFENDANT SHAW either took the photos at issue while both he and PLAINTIFFS were working in the course and scope of their employment with DEFENDANT TNC, or he lifted them from PLAINTIFFS' social media accounts, to which he had gained access by virtue of his employment with DEFENDANT TNC and his corresponding position of power and authority over PLAINTIFFS within the organization. All PLAINTIFFS learned about DEFENDANT SHAW's unlawful online misconduct on or after September 28, 2022.

3.    DEFENDANT SHAW was allowed and emboldened to commit these unlawful acts and others due to DEFENDANT TNC's history and culture of willful failure to appropriately monitor for, prevent, investigate and correct misconduct, including by failing to implement adequate policies and procedures to protect employees. DEFENDANT TNC's inadequate policies and procedures created, fostered, and allowed to exist a hostile environment for PLAINTIFFS. DEFENDANT TNC's inadequate employee protections were shocking and unconscionable for many reasons, including but not limited to:

- DEFENDANT TNC's leaders (other than DEFENDANT SHAW) repeatedly perpetrated acts of sex harassment and discrimination in the years leading up to DEFENDANT SHAW's misconduct, as a result of which DEFENDANT TNC engaged outside counsel to investigate and make recommendations which DEFENDANT TNC unreasonably failed to follow;

- Employees of DEFENDANT TNC, including but not limited to PLAINTIFFS JESSICA BLAIR, CORISSA BUSSE, and SACHIKO GRABER, repeatedly made discrimination and/or harassment complaints about DEFENDANT SHAW over the course of approximately 10 years and received no appropriate response; and

- At least one manager recognized the danger DEFENDANT SHAW posed to women in the organization and cautioned multiple women against traveling with DEFENDANT SHAW, but thereafter, DEFENDANT TNC continued to encourage DEFENDANT SHAW to photograph and go on overnight trips to the field with women subordinates.

4. In this organizationally pervasive atmosphere of denial, inaction, and willful failure to follow the law, DEFENDANT DOUGLAS SHAW photographed many of his female subordinates, including but not limited to PLAINTIFFS, posted those photographs on a photo and video sharing social media site, and made and solicited highly sexualized and false comments about PLAINTIFFS JESSICA BLAIR, ANDREA BRANDON, and CORISSA BUSSE.[1]

5. Although DEFENDANT TNC ultimately terminated DEFENDANT SHAW, Tri-State Chapter Director Ann Mullholland admitted in a written communication to staff

---

[1] Although DEFENDANT SHAW posted one or more photos of PLAINTIFFS SACHIKO GRABER and ALORA JONES on the same photo and video sharing social media site without their consent in a manner in which they were objectified, these womens' photographs and the comments about them were not sexually explicit, though they were positioned amidst other sexually explicit content.

1   after the termination that DEFENDANT TNC had continued to employ DEFENDANT

2   SHAW for a period of roughly 10 years during which multiple complaints were made about

3   his inappropriate conduct with women staff members. Additionally, Mulholland sent an

4   email to all Tri-State Chapter staff (more than 70 employees with whom PLAINTIFFS

5   worked closely) notifying them that DEFENDANT SHAW posted inappropriate pictures

6   and comments on a photo and video sharing social media website, which she specifically

7   named, before the photos and comments had been removed. As a result, many of

8   PLAINTIFFS' colleagues were immediately drawn to the site to view the photos of and

9   comments about PLAINTIFFS, causing great humiliation and embarrassment to

10  PLAINTIFFS. All of DEFENDANTS' actions, inactions, and unlawful conduct have caused

11  lasting damage to PLAINTIFFS.

12              **II. PARTIES**

13      6.     PLAINTIFF JESSICA BLAIR was an Associate Director for DEFENDANT

14  TNC's Tri-State Chapter from approximately December 2019 until March 2023. She worked

15  primarily out of DEFENDANT TNC's Minneapolis, Minnesota office, and also traveled

16  within the state of Minnesota while working in the course and scope of her employment to

17  perform fieldwork for the organization. Due to the intolerable working conditions and hostile

18  environment Ms. BLAIR experienced, including DEFENDANT TNC's failure to take

19  appropriate action after several PLAINTIFFS and others complained about the unlawful

20  conduct pervading their work environment, Ms. BLAIR was forced to leave her job at

21  DEFENDANT TNC in or about March 2023.

22      7.     PLAINTIFF ANDREA BRANDON began working primarily out of

23  DEFENDANT TNC's Minneapolis, Minnesota office in or about 2016, which was shortly

1  after she assumed a Program Coordinator role with the organization. She held this position

2  until she became a Specialist in or about 2017. In this capacity she continued to work

3  primarily out of DEFENDANT TNC's Minneapolis, Minnesota office, although she also

4  traveled to perform fieldwork for the organization in and around the state of Minnesota until

5  she left the organization in or about February 2020. At all relevant times, DEFENDANT

6  SHAW was Ms. BRANDON's direct supervisor's supervisor.

7      8.    PLAINTIFF CORISSA BUSSE began working for DEFENDANT TNC's Tri-

8  State Chapter in or about 2011. In 2015, she became a Conservation Manager. In 2022 she

9  became a Program Director. She is currently still employed by DEFENDANT TNC as a

10 Program Director. Throughout her tenure with DEFENDANT TNC, Ms. BUSSE frequently

11 traveled to DEFENDANT TNC's Minneapolis, Minnesota office and surrounding field sites

12 in Minnesota for work. While in Minnesota, Ms. BUSSE frequently interacted with

13 DEFENDANT SHAW, as he was in a supervisorial position over her.

14     9.    PLAINTIFF SACHIKO GRABER began working for DEFENDANT TNC's

15 Tri-State Chapter as a Policy Associate in or about January 2020. In or about February 2021,

16 Ms. GRABER became a Policy Manager. In or about October 2022, Ms. GRABER became

17 an Associate Director. Throughout her tenure with DEFENDANT TNC, Ms. GRABER

18 worked out of DEFENDANT TNC's Minneapolis, Minnesota office, and made visits to the

19 field in and around the state of Minnesota. Due to the intolerable working conditions and

20 hostile environment Ms. GRABER experienced, including DEFENDANT TNC's failure to

21 take appropriate action after several PLAINTIFFS and others complained about the unlawful

22 conduct pervading their work environment, Ms. GRABER was forced to leave her job at

23 DEFENDANT TNC in or about July 2023.

10.    PLAINTIFF ALORA JONES was a Strategist for DEFENDANT TNC from approximately June 2019 until she was promoted to a Senior Strategist in 2020. Her work was based out of DEFENDANT TNC's Minneapolis, Minnesota office, and she visited field sites throughout the state of Minnesota while working in the course and scope of her employment. In late 2022, DEFENDANT TNC directed Ms. JONES to review DEFENDANT TNC's entire website and all of its Chapter-owned social media accounts to ensure that any mention of DEFENDANT SHAW had been removed. When it made this assignment, DEFENDANT TNC had knowledge of the fact DEFENDANT SHAW had posted inappropriate pictures of Ms. JONES without her consent. These actions and others caused Ms. JONES to suffer significant distress, resulted in her taking a leave of absence in or about October 2022, and ultimately led to her leaving her employment with DEFENDANT TNC in or about April 2023.

11.    DEFENDANT TNC is a nonprofit corporation formed in the District of Columbia, with its headquarters in Arlington, Virginia. The TNC Tri-State headquarters is in Minnesota. During all relevant time periods, DEFENDANT TNC had and continues to have 15 or more employees and, as such, is an "employer" within the meaning of 42 U.S.C. §§ 2000e - 2000e17, aka Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), as well as the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.01 *et seq*.

12.    DEFENDANT DOUGLAS SHAW is a resident of Minnesota and at all times material herein was an employee and agent of DEFENDANT TNC and was acting within the course and scope of his employment with DEFENDANT TNC such that his actions and inactions are attributable to DEFENDANT TNC. DEFENDANT SHAW is also individually and personally responsible and liable for his unlawful conduct. DEFENDANT SHAW

worked as the Associate Chapter Director/Director of Conservation Science for DEFENDANT TNC's Tri-State Chapter from approximately 2011 until September 29, 2022. At all relevant times DEFENDANT SHAW's work was based out of DEFENDANT TNC's Minneapolis, Minnesota office.

### III. JURISDICTION AND VENUE

13.     This Court has original jurisdiction over this action under 28 U.S.C. § 1331, as multiple causes of action asserted herein arise under federal law, Title VII, 42 U.S.C. §§ 2000e - 2000e17.

14.     The Court also has subject matter jurisdiction over PLAINTIFFS' state law claims pursuant to 28 U.S.C. § 1367, because PLAINTIFFS' state law claims are so related to claims in the action within the Court's original federal subject matter jurisdiction that they form part of the same case or controversy under Article II of the United States Constitution; each of PLAINTIFFS' claims and arise from a common nucleus of operative facts such that the adjudication of PLAINTIFFS' state law claims with PLAINTIFFS' federal claims furthers the interest of judicial economy.

15.     This suit is brought in the United States District Court for the District of Minnesota. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because PLAINTIFFS worked in Minnesota, Douglas Shaw works and resides in Minnesota, the TNC Tri-State headquarters are in Minnesota, the unlawful conduct alleged herein was committed in Minnesota, and Minnesota is where a substantial part of the events or omissions giving rise to the causes of action asserted herein occurred.

### IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

16.     On July 10, 2023, the Equal Employment Opportunity Commission (EEOC)

filed a charge of discrimination for all PLAINTIFFS. Each and every charge alleges gender discrimination and gender harassment under Title VII of the Civil Rights Act.

17.    The charges of discrimination filed on behalf of JESSICA BLAIR, ANDREA BRANDON, SACHIKO GRABER, and ALORA JONES all state they were concurrently presented to THE MINNESOTA DEPARTMENT OF HUMAN RIGHTS.

18.    The charge of discrimination filed on behalf of CORISSA BUSSE states it was concurrently presented to THE SOUTH DAKOTA DEPARTMENT OF LABOR AND REGULATION: DIVISION OF HUMAN RIGHTS. On or about September 14, 2023, Ms. BUSSE made a report of discrimination to THE MINNESOTA DEPARTMENT OF HUMAN RIGHTS in which she alleged gender discrimination and harassment against DEFENDANT TNC and DEFENDANT SHAW. On or about January 10, 2024, an investigator at THE MINNESOTA DEPARTMENT OF HUMAN RIGHTS interviewed Ms. BUSSE regarding her complaint.

19.    All PLAINTIFFS received right to sue notices from the EEOC on February 5, 2024.

**V. STATEMENT OF FACTS**

20.    PLAINTIFFS are a group of dedicated conservationists, all of whom have devoted many years of their lives to fulfilling DEFENDANT TNC's stated mission to conserve, protect, and restore natural diversity. PLAINTIFFS all worked at DEFENDANT TNC's Minnesota, North Dakota and South Dakota Chapters (hereinafter referred to as the "Tri-State Chapter") which was recently led by Chapter Director Ann Mulholland as well as Associate Chapter Director/Director of Conservation Science DEFENDANT DOUGLAS SHAW. As a result of DEFENDANT SHAW's high rank in the organization, he was in a

position of power over each and every PLAINTIFF. DEFENDANT SHAW abused his position of power in the workplace including when he misused numerous photos of PLAINTIFFS JESSICA BLAIR, ANDREA BRANDON, and CORISSA BUSSE, for his own and others' sexual gratification without their consent. DEFENDANT SHAW also abused his position of power when he took and posted photos of PLAINTIFFS SACHIKO GRABER and ALORA JONES without their consent.

21.    DEFENDANT SHAW either took the photos at issue during the course and scope of his work with PLAINTIFFS or he lifted them from their social media accounts, to which he had access due by virtue of his above-described position of power and authority at DEFENDANT TNC. In multiple instances, when DEFENDANT SHAW posted the photos on a photo and video sharing social media site, he altered the photos to make them sexual in nature and/or create "deepfake"[2] explicit sexual images.

22.    In or about mid-2019, while DEFENDANT SHAW and PLAINTIFFS ANDREA BRANDON and CORISSA BUSSE were actively working for DEFENDANT TNC, the organization's President, Brian McPeek, and Vice President & North American Managing Director, Mark Burget, resigned. They did so shortly after the law firm McDermott Will & Emery conducted an investigation into sexual harassment allegations against them that were initially made via Twitter. The outside law firm's "investigation" found: credible evidence of an executive's unwelcome kissing of a TNC employee; two

_____

[2] Pursuant to the Merriam Webster Dictionary, a deepfake image is "an image or recording that has been convincingly altered and manipulated to misrepresent someone as doing or saying something that was not actually done or said."

executives' failure to timely disclose their romantic workplace relationships; a determination that two executives "exercised poor judgement in discussing the investigation with TNC employees;" and many opportunities for DEFENDANT TNC to improve its procedures to respond to complaints of sexual harassment.

23.     Shortly thereafter, DEFENDANT TNC rewarded the sexually harassing and discriminatory misconduct by men in positions of power. DEFENDANT TNC's IRS Form 990 for the fiscal year *after* the President McPeek's and Vice President Burget's resignations due to substantiated sexual harassment allegations show DEFENDANT TNC paid former-President McPeek nearly $1.2 million and it paid former-Vice President Burget roughly $400,000 after their resignations.

24.     DEFENDANT TNC's culture of discrimination, harassment, denial, inaction, and willful failure to appropriately prevent and correct misconduct is exemplified by the actions of the organization's CEO in the immediate aftermath of the 2019 sexual harassment allegations. Then-CEO Mark Tercek held a townhall and sent out "talking points" to his employees shortly after the sexual harassment allegations became public. In these official forums, the CEO directed all employees to spread the word that the sexual harassment allegations on Twitter "were thoroughly investigated… [and] No evidence has been found to substantiate any of the allegations."

25.     In addition, during this same time period, many women employees including JESSICA BLAIR, CORISSA BUSSE, and SACHIKO GRABER specifically complained about DEFENDANT SHAW's inappropriate conduct. For example, CORISSA BUSSE told her male supervisor on multiple occasions throughout the roughly seven years they worked together that DEFENDANT SHAW treated her in a hostile and uniquely negative manner

1    that she never observed in DEFENDANT SHAW's interactions with male colleagues.

2    CORISSA BUSSE also reported that DEFENDANT SHAW denied her appropriate job

3    grade recognitions and promotions, such as when DEFENDANT SHAW refused to change

4    her status for years despite her assumption of higher-level Program Director duties that were

5    outside the scope of her assigned role. CORISSA BUSSE's supervisor's only response was

6    to encourage her to have "patience."

7        26.    Approximately a week before some of the PLAINTIFFS discovered

8    DEFENDANT SHAW's online abuse, CORISSA BUSSE notified Tri-State Chapter

9    Director Ann Mulholland that she was concerned about her upcoming transition to a new

10   role, as it would require her women supervisees and fellow women staff members to work

11   more closely with DEFENDANT SHAW during her transition. CORISSA BUSSE

12   specifically raised concerns about DEFENDANT SHAW scheduling a mandatory field tour

13   with female staff (which is the type of event at which DEFENDANT SHAW typically took

14   photos of staff). Chapter Director Ann Mulholland told CORISSA BUSSE that her concerns

15   would be considered; however, DEFENDANT TNC took no immediate action to address

16   those concerns, and the field tour was still set to occur as of the time CORISSA BUSSE

17   discovered DEFENDANT SHAW had posted abusive, discriminatory, and unlawful photos

18   and comments of her and others online. DEFENDANT SHAW's departure from the

19   organization was the only reason the field tour event was canceled.

20       27.    In addition, throughout 2020, JESSICA BLAIR reported to her supervisor that

21   DEFENDANT SHAW was demeaning and abusive to her in their interactions. JESSICA

22   BLAIR reported that in professional settings with numerous attendees, DEFENDANT

23   SHAW made demoralizing comments to assert his dominance and superiority. JESSICA

1    BLAIR's supervisor's only response was to tell JESSICA BLAIR to speak directly with her

2    harasser – DEFENDANT SHAW – about his harassment.

3        28.    In June of 2022, months before PLAINTIFF CORISSA BUSSE and the other

4    PLAINTIFFS discovered the illegal misconduct DEFENDANT SHAW was perpetrating

5    online, SACHIKO GRABER made a formal complaint about a recent meeting with

6    DEFENDANT SHAW in which she reported that his "countenance and raised voice made

7    me feel weak and devalued throughout the meeting." SACHIKO GRABER used

8    DEFENDANT TNC's Human Resources formal reporting system, "Convercent," to make

9    this complaint. SACHIKO GRABER's complaint detailed the fact she had previously told

10   Chapter Director Ann Mulholland about DEFENDANT SHAW's inappropriate behavior

11   directed towards her and another female employee, and SACHIKO GRABER requested

12   remedial action. Chapter Director Ann Mulholland immediately rejected this request without

13   any investigation or consideration.

14       29.    In her written complaint to Human Resources, SACHIKO GRABER further

15   documented the fact that Chapter Director Ann Mulholland specifically told SACHIKO

16   GRABER to watch her tone while she was raising concerns about DEFENDANT SHAW's

17   discriminatory actions. SACHIKO GRABER's formal report states: "I felt that my chapter's

18   leadership had something going on and tried to cover it by blaming me...." SACHIKO

19   GRABER concluded her report by saying that she believed her experience "is not

20   uncommon for women of color in our chapter. . . . I am aware others have also had

21   challenging experiences with our leadership. I know that many of us have had to invest in

22   therapy and personal healing time simply for the trauma we experience in our TNC office."

23       30.    SACHIKO GRABER received no formal response to her complaint of

discrimination and harassment. Although DEFENDANT TNC's global Human Resources team said they were "investigating" the matter, the issue was still unresolved as of the date of DEFENDANT SHAW's departure from the organization in late September 2022. When SACHIKO GRABER followed up with Human Resources leaders thereafter, she was told that the issues she had raised were "moot" because DEFENDANT SHAW had been terminated, even though those "issues" included DEFENDANT TNC's pattern of discriminating against and harassing women employees.

31.    DEFENDANT SHAW left the organization on or about September 29, 2022, after PLAINTIFF CORISSA BUSSE discovered that DEFENDANT SHAW's illegal actions included online posting of false and sexually explicit photographs and comments about several PLAINTIFFS and others on a video and photo sharing social media site. All PLAINTIFFS learned that DEFENDANT SHAW was illegally posting photographs of and/or comments about them on his account on this social media site. Without receiving consent from any of the PLAINTIFFS, DEFENDANT SHAW facilitated and engaged in highly sexualized commentary about JESSICA BLAIR's, ANDREA BRANDON's, and CORISSA BUSSE's, appearances and actions through his misuse of photos he had taken at TNC work events, photos he had lifted from the women's private social media accounts, and "deepfake" images. DEFENDANT SHAW and members of the public, many of whom were DEFENDANT SHAW's "friends" on the social media site, made dehumanizing, objectifying, and/or untrue comments about PLAINTIFFS JESSICA BLAIR, ANDREA BRANDON, and CORISSA BUSSE, and without their knowledge or consent.

32.    The images and comments, all of which were discovered by PLAINTIFFS on or after September 28, 2022, included but were not limited to:

- A photo of JESSICA BLAIR outside DEFENDANT TNC's Minneapolis office, which DEFENDANT SHAW took during the course and scope of his work and subsequently posted to his publicly-accessible social media account, and in response to which a user tagged DEFENDANT SHAW in his description of JESSICA BLAIR as "Mild mannered by day, a tigress at night…"

- A photo of JESSICA BLAIR during a donor field trip in Minnesota in which the top portion of her cleavage is exposed due to the movement of her arms, which DEFENDANT SHAW took without Ms. BLAIR's consent during the course and scope of his work and posted to his publicly-accessible social media account, which he titled with her name and about which another user commented "Awesome view and fantastic capture!";

- A photo of ANDREA BRANDON's buttocks and legs while she's wearing only a bathing suit, which DEFENDANT SHAW posted without her consent to his publicly-accessible social media account, and which he titled with her name and used to solicit comments from other users including "She has such a lovely curve to her ass," "love her peachy ass," and "Realy [sic] sexy…";

- A photo of ANDREA BRANDON canoeing with her husband during a work trip to the field in Minnesota, which DEFENDANT SHAW took during the course and scope of his work and posted to his publicly accessible social media account, and which he titled with her name and falsely commented "That's Andrea's now husband…. The three of us and my wife have a complicated but fun relationship";

- A photo of ANDREA BRANDON's back and buttocks while wearing only a swimsuit top and swim shorts, which DEFENDANT SHAW took during the

1    course and scope of a work trip in Minnesota and posted to his publicly accessible

2    social media account, and which he titled with her real name and the comment

3    "that ASS tho!" and about which he commented to another user in or about 2021,

4    "I just followed you and added you as Friend so you can see all of our photos,

5    including more of Andrea. Hope you enjoy!";

6    -   Several photos of ANDREA BRANDON in swimwear due to the nature of the

7    work she was performing in the field, which DEFENDANT SHAW took and

8    subsequently posted to his publicly accessible social media account, and which

9    he titled with her real name and used to solicit comments from other users such

10   as "I wanna lick this erotic wrenkles [sic]" (in or about 2020), and "Adore Andrea

11   – perfect action woman- sexy body, especially her lovely bum!" (in or about

12   January 2022);

13   -   A photo of ANDREA BRANDON kissing DEFENDANT SHAW's wife on the

14   cheek at an event in Minnesota, which DEFENDANT SHAW took and posted to

15   his publicly accessible social media account, and about which he falsely

16   commented "Andrea and [DEFENDANT SHAW's wife's name] have had sex

17   many times. I believe they did later the night of this photo. Occasionally, they let

18   me join them. Lol.";

19   -   A photo of ANDREA BRANDON on the phone while sitting at her desk in

20   DEFENDANT TNC's Minneapolis, Minnesota office, which DEFENDANT

21   SHAW took during the course and scope of his work and posted to his publicly

22   accessible social media account, and which DEFENDANT SHAW used to solicit

23   comments from other users such as "Yum," "Great legs!," "Cute toes," and about

which DEFENDANT SHAW wrote "I have quite a few more pictures of Andrea in my album of the same name. If you'd like me to add you as Friend you can see a few more of our Friends Only images of her. Let me know and I'll add you";

- Several deepfake photos of ANDREA BRANDON or faceless photos DEFENDANT SHAW falsely attributed to ANDREA BRANDON, including but not limited to: a pregnant woman masturbating, a woman engaging in sexual acts, and an image that appears to be Ms. BRANDON posing naked in a tent;

- A photo of ANDREA BRANDON holding her infant son at their home in Minneapolis, Minnesota, which DEFENDANT SHAW took from ANDREA BRANDON's personal social media account and posted to his publicly accessible social media account, which DEFENDANT SHAW titled "Andrea and [son's name]" and used to solicit comments including "yummy mommy" and "Moms are so hot.";

- A photo of CORISSA BUSSE at work in DEFENDANT TNC's office, which DEFENDANT SHAW took in the course and scope of his work and posted to his publicly accessible social media account, and about which DEFENDANT SHAW had an exchange with another user in approximately late 2020 during which the other user asked, "Do you have any of her nude, she is enchanting" and DEFENDANT SHAW responded with a false representation that stated: "No, not nude, but I do have one of her getting a facial at her birthday party. It's in my album 'Friday night parties'";

- The deepfake photo of CORISSA BUSSE created by DEFENDANT SHAW with what appears to be ejaculate covering her face, which DEFENDANT SHAW

uploaded to his publicly accessible social media account, and which DEFENDANT SHAW titled with a false representation that states: "Corissa's 30th birthday party… got a little out of hand. . . .";

- A photo of CORISSA BUSSE smiling innocently, which DEFENDANT SHAW took at work and posted to his publicly accessible social media account, and which was the subject of an exchange between DEFENDANT SHAW and another user in which the other user asked "She was too wholesome to pose for naughty pics?" and DEFENDANT SHAW replied "So far…but there's plenty of time and opportunity.";

- A photo of CORISSA BUSSE, which DEFENDANT SHAW took at work and posted to his publicly accessible social media account, and about which DEFENDANT SHAW commented "Corissa is a gem! She also has a wild side."

All the above images and comments enumerated in this paragraph remained online and publicly accessible through at least September 2022.

33.    DEFENDANT SHAW also made comments about several more innocent photos and directed users to his more graphic images. He fostered a community where innocent photos were intensely sexualized. DEFENDANT SHAW also used the real names of and pictures of his women subordinates and their family members (including at least one child). If another user of the website commented about their sexual desire for one of the women, DEFENDANT SHAW would recommend other photos the users should view. Frequently, this included recommending that users add him as a friend in order to view the more sexually graphic folders, which included the altered or deepfake images he had created of PLAINTIFFS. DEFENDANT SHAW also discussed asking the women to pose nude or

taking photos of them in their underwear.

34.    Shortly after DEFENDANT SHAW left his employment with DEFENDANT TNC, Tri-State Chapter Director Ann Mulholland admitted in writing to DEFENDANT TNC staff:

> "We found evidence that, beyond making or inviting sexually explicit comments about certain TNC staff whose photos he posted on his Flickr account, there were several instances where behavior during his tenure with the Tri-State program was unprofessional, violated TNC's policies on confidentiality, and was inconsistent with TNC's guidelines on ethical use of images…We did find a pattern of behavior that involved him paying excessive attention toward certain female staff that either made the women feel uncomfortable or that it disrupted the workplace and team dynamics."

35.    While DEFENDANT TNC did take some action after learning about DEFENDANT SHAW's unlawful online activity, the organization's response was unreasonably late in coming, given what it already knew or should have known about DEFENDANT SHAW's other discriminatory and harassing conduct (described above) and it was wholly inadequate and inappropriate. To begin, shortly after CORISSA BUSSE reported DEFENDANT SHAW's unlawful online activity, Tri-State Chapter Director Ann Mulholland sent an email to all Tri-State Chapter staff (more than 70 employees with whom PLAINTIFFS worked closely) notifying them of the online misconduct, identifying the social media site on which DEFENDANT SHAW had posted the above-described photos and comments, and identifying that specific site before any of the photos were taken down or removed. As a result, many of the staff members who received Chapter Director Ann Mulholland's email were immediately drawn to the specific social media site to view the photos of and comments about PLAINTIFFS, causing great humiliation and embarrassment to PLAINTIFFS.

36.    DEFENDANT TNC also purposefully withheld information from

PLAINTIFFS. For example, a representative from DEFENDANT TNC informed ANDREA BRANDON that there were pictures on DEFENDANT SHAW'S social media account of a pregnant woman masturbating, who DEFENDANT SHAW falsely identified as ANDREA BRANDON, as well as pictures of a man and woman engaged in sexual acts, which DEFENDANT SHAW's comments falsely identified as ANDREA BRANDON and her husband. ANDREA BRANDON requested that DEFENDANT TNC provide copies of all photos of her and those attributed to her, but to date, DEFENDANT TNC has withheld this evidence.

37.   Furthermore, despite its actual knowledge of their existence and provenance, DEFENDANT TNC failed to inform some of the PLAINTIFFS that DEFENDANT SHAW had unlawfully posted and made publicly accessible altered or otherwise sexualized photos and comments of them without their knowledge or consent.

38.   PLAINTIFFS ANDREA BRANDON and CORISSA BUSSE initially learned from friends or coworkers (not DEFENDANT TNC) that they were on DEFENDANT SHAW's photo and video sharing social media account without their consent. DEFENDANT TNC failed to take any steps to notify these PLAINTIFFS and other women that there was a public website displaying images of them which could have dire professional and social consequences, or to independently confirm that DEFENDANT SHAW had removed those images and comments from the website. For example, DEFENDANT TNC made an intentional choice to let ANDREA BRANDON, who was in over 300 photographs including some with her infant child and husband, learn about DEFENDANT SHAW's misconduct from a former non-managerial colleague, even despite CORISSA BUSSE's request to DEFENDANT TNC that ANDREA BRANDON be notified immediately at the

time of Ms. BUSSE's initial discovery of DEFENDANT SHAW's illegal online misconduct on or about September 28, 2022.

39.    DEFENDANT TNC has admitted that it simply relied on DEFENDANT SHAW's representation that all images related to DEFENDANT TNC employees had been removed from his accounts, rather than taking any action to independently investigate or verify DEFENDANT SHAW's representations or to otherwise protect PLAINTIFFS and their reputations. It was not until approximately October 2022 that DEFENDANT TNC directed ALORA JONES, who, as described herein, was herself a subject of DEFNDANT SHAW's unlawful conduct, to review DEFENDANT TNC's entire website and all of the organization's Tri-State Chapter-owned social media accounts in an effort to protect its own reputation by ensuring that any mention of DEFENDANT SHAW had been removed. This caused ALORA JONES significant emotional distress, which led to her need for a leave of absence and ultimately forced the separation of her employment with DEFENDANT TNC.

40.    After learning of the images and the devastating impact they had on PLAINTIFFS, DEFENDANT TNC had the temerity to ask CORISSA BUSSE, and SACHIKO GRABER to be in a donor video shoot in or about late 2022. CORISSA BUSSE felt very uncomfortable with this request and declined. SACHIKO GRABER responded to DEFENDANT TNC's request by stating she felt the organization was making an inappropriate request given the recent traumatic events surrounding photographs, she was not comfortable with DEFENDANT TNC assuming they could use her photo, and she felt DEFENDANT TNC should explain what the photos would be used for.

41.    In or about November 2022, DEFENDANT TNC held an all staff retreat at which PLAINTIFFS JESSICA BLAIR, SACHIKO GRABER, and ALORA JONES were

present. DEFENDANT TNC encouraged women staff members to speak openly on the subject of DEFENDANT SHAW's misconduct. As PLAINTIFF JESSICA BLAIR was speaking to the group and sharing that she felt humiliated, betrayed, and let down by DEFENDANTS TNC and SHAW, she had a severe physical reaction to the emotional distress she was experiencing. Thereafter, Ms. BLAIR was excluded from meetings, development opportunities, and treated in a hostile and cold manner by managers. These events and other working conditions were so intolerable that Ms. BLAIR ultimately felt compelled to resign her employment with DEFENDANT TNC.

42.    DEFENDANT TNC's Human Resources Department did not update its ineffective sexual harassment training until approximately six months after the PLAINTIFFS' late September 2022 discovery of DEFENDANT SHAW's online abuse. Finally, on or about April 11, 2023, DEFENDANT TNC's Human Resources team "piloted" a new training for the Tri-State Chapter. This "training" included no mention of protection against discriminatory or harassing photographs or images. During the training, managers encouraged the attendees, including PLAINTIFF SACHIKO GRABER to report when people in positions of authority used their relative power to engender feelings of insecurity or an inability to speak up. When several women raised the fact that DEFENDANT TNC's willful blindness to past reports was a serious concern for them, a manager replied they were sensing a "combativeness" and "accusatory energy" from the women, and that the women needed to understand that Human Resources professionals are "flawed humans like the rest of us."

43.    During a subsequent portion of the training, DEFENDANT TNC's managers stressed that when speaking about DEFENDANT TNC's response to DEFENDANT

SHAW's unlawful conduct, PLAINTIFFS and others needed to be "respectful and calm" or else their message would not be heard. These comments reminded several PLAINTIFFS of previous statements made by DEFENDANT TNC's Employee Relations Director Sheryl Trim, who, when confronted on other occasions by employees who expressed their belief that DEFENDANT TNC was not living up to their expectations or its responsibilities, told those employees that they were welcome to leave the organization.

44.    DEFENDANT TNC's and DEFENDANT SHAW's actions were undertaken for improper purposes as alleged above, and DEFENDANTS' actions were willful, oppressive and in conscious disregard of all PLAINTIFFS' rights. DEFENDANTS' actions were designed and intended to cause, and did cause and continue to cause, PLAINTIFFS to suffer severe emotional distress pain and suffering and economic damages, and therefore justify the awarding of exemplary and punitive damages.

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Sex Harassment – Hostile Work Environment – in Violation of Title VII against DEFENDANT TNC**

As a first cause of action, all PLAINTIFFS complain against DEFENDANT TNC and allege as follows:

45.    PLAINTIFFS re-allege and incorporate by reference each paragraph previously alleged in the Complaint as if fully set forth herein.

46.    At all times material herein PLAINTIFFS and DEFENDANT TNC stood in relation as "employee" and "employer," respectively, within the meaning of Title VII, specifically, 42 U.S.C. § 2000e(b) and (f).

47.   Under 42 U.S.C. § 2000e-2(a)(1), "[i]t shall be an unlawful employment practice for an employer - - (1) to fail to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, terms, conditions, or privileges of employment, because of such individual's . . . sex. . ."

48.   As set forth at length in the preceding paragraphs, DEFENDANTS TNC and SHAW discriminated against PLAINTIFFS with respect to their compensation, terms, conditions or privileges of their employment because of their sex, female, including by subjecting them to an intimidating, hostile or offensive work environment because of their sex, female, all in violation of Title VII.

49.   DEFENDANTS discriminating and harassing conduct included but was not limited to: DEFENDANT SHAW making and/or soliciting sexualized comments about photos of PLAINTIFFS that he personally took in the course and scope of work, or which he was able to take from PLAINTIFFS' social media accounts due to his "friend" status granted because of his position of employment-related power and authority; DEFENDANT TNC informing all Tri-State Chapter staff (more than 70 employees with whom PLAINTIFFS worked closely) of the online misconduct before any of the photos were removed; DEFENDANT SHAW speaking to JESSICA BLAIR, CORISSA BUSSE, and SACHIKO GRABER in a demeaning, disparaging, and abusive manner on multiple occasions, which he did not do with male employees; DEFENDANT TNC accusing a group of women – including SACHIKO GRABER – of being combative and accusatory in the course of receiving complaints about its failure to respond appropriately to previous complaints of unlawful conduct, and further admonishing the group to be "respectful and calm" in this context; and DEFENDANT TNC admonishing SACHIKO GRABER to watch

1    her tone when reporting DEFENDANT SHAW's unlawful conduct.

2        50.    As the Associate Chapter Director/Director of Conservation Science for

3    DEFENDANT TNC's Tri-State Chapter at the time of the incidents described herein,

4    DEFENDANT SHAW was acting in the course and scope of his employment in connection

5    with the occurrences described herein, was PLAINTIFFS' supervisor, and was the proxy or

6    alter-ego of DEFENDANT TNC; as such, DEFENDANT TNC is vicariously liable for

7    DEFENDANT SHAW's conduct and actions.

8        51.    The harassing actions were unwelcome, sufficiently severe or pervasive to

9    alter the conditions of the PLAINTIFFS' employment and create a sexually abusive or

10   hostile work environment, and detrimentally affected all PLAINTIFFS.

11       52.    All PLAINTIFFS viewed these actions and their working environment as

12   hostile or abusive, and a reasonable woman in the PLAINTIFFS' circumstances would

13   consider DEFENDANTS' conduct and the working environment to be hostile or abusive.

14       53.    Due to ongoing complaints of DEFENDANT SHAW's harassment and the

15   fact other agents of DEFENDANT TNC perpetrated the harassment and/or observed the

16   harassment, DEFENDANT TNC had actual or constructive knowledge of the continuous

17   and ongoing harassment.

18       54.    DEFENDANT TNC failed to take prompt and appropriate remedial action to

19   prevent or correct further harassment of all PLAINTIFFS.

20       55.    All PLAINTIFFS were harmed by the unwelcome harassment in that they

21   suffered emotional distress and further mistreatment in the workplace.

22       56.    DEFENDANTS' harassing conduct was a substantial factor in causing

23   PLAINTIFFS' harm.

57.    DEFENDANTS committed the acts set forth in this complaint despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring PLAINTIFFS, from an improper and evil motive amounting to malice, and in conscious disregard of PLAINTIFFS' rights to be free from harassment. PLAINTIFFS are thus entitled to recover punitive damages from DEFENDANTS in an amount according to proof at trial.

58.    As a direct result of DEFENDANT TNC's violation of Title VII, PLAINTIFFS have suffered and will continue to suffer loss of wages and benefits, have endured and will continue to endure emotional distress, impairment of reputation, personal humiliation, and mental anguish. Accordingly, PLAINTIFFS seek to recover all relief available under Title VII, including compensatory damages, an award of attorneys' fees and costs, as well as other fees and costs, including those related to experts, pursuant to 42 U.S.C. § 2000e-5, and appropriate injunctive and equitable relief.

## SECOND CAUSE OF ACTION

### Sex Harassment – Hostile Work Environment – in Violation the MHRA against DEFENDANT TNC

As a first cause of action, all PLAINTIFFS complain against DEFENDANT TNC and allege as follows:

59.    PLAINTIFFS re-allege and incorporate by reference each paragraph previously alleged in the Complaint as if fully set forth herein.

60.    At all times material herein PLAINTIFFS and DEFENDANT TNC stood in relation as "employee" and "employer," respectively, within the meaning of the MHRA, specifically, Minn. Stat. Ann. § 363A.03.

61.    Under Minn. Stat. Ann. § 363A.08, subd. 2, "it is an unfair employment

practice for an employer, because of . . . sex, . . . to: . . . (3) discriminate against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment."

62.    As set forth at length in the preceding paragraphs, DEFENDANTS TNC and SHAW discriminated against PLAINTIFFS with respect to their hiring, tenure, compensation, terms, upgrading, conditions, facilities, and/or privileges of employment of their employment because of their sex, female, including by subjecting them to an intimidating, hostile or offensive work environment because of their sex, female, all in violation of the MHRA.

63.    DEFENDANTS discriminating and harassing conduct included but was not limited to: DEFENDANT SHAW making and/or soliciting sexualized comments about photos of PLAINTIFFS that he personally took in the course and scope of work, or which he was able to take from PLAINTIFFS' social media accounts due to his "friend" status granted because of his position of employment-related power and authority; DEFENDANT TNC informing all Tri-State Chapter staff (more than 70 employees with whom PLAINTIFFS worked closely) of the online misconduct before any of the photos were removed; DEFENDANT SHAW speaking to JESSICA BLAIR, CORISSA BUSSE, and SACHIKO GRABER in a demeaning, disparaging, and abusive manner on multiple occasions, which he did not do with male employees; DEFENDANT TNC accusing a group of women – including SACHIKO GRABER – of being combative and accusatory in the course of receiving complaints about its failure to respond appropriately to previous complaints of unlawful conduct, and further admonishing the group to be "respectful and calm" in this context; and DEFENDANT TNC admonishing SACHIKO GRABER to watch

her tone when reporting DEFENDANT SHAW's unlawful conduct.

64.    As the Associate Chapter Director/Director of Conservation Science for DEFENDANT TNC's Tri-State Chapter at the time of the incidents described herein, DEFENDANT SHAW was acting in the course and scope of his employment in connection with the occurrences described herein, was PLAINTIFFS' supervisor, and was the proxy or alter-ego of DEFENDANT TNC; as such, DEFENDANT TNC is vicariously liable for DEFENDANT SHAW's conduct and actions.

65.    The harassing actions were unwelcome, sufficiently severe or pervasive to alter the conditions of the PLAINTIFFS' employment and create a sexually abusive or hostile work environment, and detrimentally affected all PLAINTIFFS.

66.    All PLAINTIFFS viewed these actions and their working environment as hostile or abusive, and a reasonable woman in the PLAINTIFFS' circumstances would consider DEFENDANTS' conduct and the working environment to be hostile or abusive.

67.    Due to ongoing complaints of DEFENDANT SHAW's harassment and the fact other agents of DEFENDANT TNC perpetrated the harassment and/or observed the harassment, DEFENDANT TNC had actual or constructive knowledge of the continuous and ongoing harassment.

68.    DEFENDANT TNC failed to take prompt and appropriate remedial action to prevent or correct further harassment of all PLAINTIFFS.

69.    All PLAINTIFFS were harmed by the unwelcome harassment in that they suffered emotional distress and further mistreatment in the workplace.

70.    DEFENDANTS' harassing conduct was a substantial factor in causing PLAINTIFFS' harm.

71.     DEFENDANTS committed the acts set forth in this complaint despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring PLAINTIFFS, from an improper and evil motive amounting to malice, and in conscious disregard of PLAINTIFFS' rights to be free from harassment. PLAINTIFFS are thus entitled to recover punitive damages from DEFENDANTS in an amount according to proof at trial.

72.     As a direct result of DEFENDANT TNC's violation of the MHRA, PLAINTIFFS have suffered and will continue to suffer loss of wages and benefits, have endured and will continue to endure emotional distress, impairment of reputation, personal humiliation, and mental anguish. Accordingly, PLAINTIFFS seek to recover all relief available under the MHRA, including compensatory damages, an award of attorneys' fees and costs, as well as other fees and costs, including those related to experts, pursuant to Minn. Stat. § 363A.29, and appropriate injunctive and equitable relief.

### THIRD CAUSE OF ACTION

**Sex Discrimination – Disparate Treatment – in Violation of
Title VII against DEFENDANT TNC**

All PLAINTIFFS complain against DEFENDANT TNC and allege as follows:

73.     PLAINTIFFS re-allege and incorporate by reference each paragraph previously alleged in the Complaint as if fully set forth herein.

74.     At all times material herein PLAINTIFFS and DEFENDANT TNC stood in relation as "employee" and "employer," respectively, within the meaning of Title VII, specifically, 42 U.S.C. § 2000e(b) and (f).

75.     Under 42 U.S.C. § 2000e-2(a)(1), "[i]t shall be an unlawful employment practice for an employer - - (1) to fail to hire or to discharge any individual, or otherwise to

1  discriminate against any individual with respect to his compensation, terms, conditions,

2  terms, conditions, or privileges of employment, because of such individual's . . . sex. . ."

3      76.     As set forth at length in the preceding paragraphs, DEFENDANTS TNC and

4  SHAW discriminated against PLAINTIFFS with respect to the compensation, terms,

5  conditions or privileges of their employment because of their sex, female in violation of Title

6  VII.

7      77.     DEFENDANT TNC caused and/or permitted sex-based discrimination by

8  engaging in differential treatment of PLAINTIFFS, all of whom are women, even after

9  PLAINTIFFS JESSICA BLAIR, CORISSA BUSSE, and SACHIKO GRABER complained

10  of sex discrimination and harassment. Not only did DEFENDANT TNC fail to investigate

11  PLAINTIFFS claims, its management and supervisory level employees were also extremely

12  condescending and dismissive of PLAINTIFFS' concerns and claims (for example by

13  stating PLAINTIFF SACHIKO GRABER was "combative and accusatory") regarding

14  DEFENDANT TNC's failure to respond appropriately to previous complaints of unlawful

15  conduct, and further admonishing this group to be "respectful and calm." These are only

16  some examples.

17      78.     As a direct and proximate result of DEFENDANT TNC's conduct,

18  PLAINTIFFS JESSICA BLAIR's and SACHIKO GRABER's working conditions were so

19  intolerable that they felt compelled to resign, and a reasonable person in these PLAINTIFFS'

20  positions would feel compelled to resign.

21      79.     As a result of DEFENDANT'S conduct, JESSICA BLAIR and SACHIKO

22  GRABER were directly and legally caused to suffer actual damages including but not limited

23  to back pay and front pay, as well as the intangible loss of employment-related opportunities

1    and other damages, all in an amount according to proof at trial.

2       80.    As a direct and proximate result of the wrongful acts of DEFENDANT TNC,

3    PLAINTIFFS have suffered and continue to suffer emotional distress, humiliation, mental

4    anguish and embarrassment. PLAINTIFFS are informed and believe and thereupon allege

5    that they will continue to experience said suffering for a period in the future not presently

6    ascertainable, all in an amount according to proof at trial.

7       81.    DEFENDANT TNC committed the acts set forth in this complaint despicably,

8    maliciously, fraudulently, and oppressively, with the wrongful intention of injuring

9    PLAINTIFFS, from an improper and evil motive amounting to malice, and in conscious

10    disregard of PLAINTIFFS' rights to be free from discrimination. PLAINTIFFS are thus

11    entitled to recover punitive damages from DEFENDANT TNC in an amount according to

12    proof at trial.

13       82.    As a direct result of DEFENDANT TNC's violation of Title VII,

14    PLAINTIFFS have suffered and will continue to suffer loss of wages and benefits, have

15    endured and will continue to endure emotional distress, impairment of reputation, personal

16    humiliation, and mental anguish. Accordingly, PLAINTIFFS seek to recover all relief

17    available under Title VII, including compensatory damages, an award of attorneys' fees and

18    costs, as well as other fees and costs, including those related to experts, pursuant to 42 U.S.C.

19    § 2000e-5, and appropriate injunctive and equitable relief.

20    **FOURTH CAUSE OF ACTION**

21    **Sex Discrimination – Disparate Treatment – in Violation of the
MHRA against DEFENDANT TNC**

22

23    All PLAINTIFFS complain against DEFENDANT TNC and allege as follows:

83.    PLAINTIFFS re-allege and incorporate by reference each paragraph previously alleged in the Complaint as if fully set forth herein.

84.    At all times material herein PLAINTIFFS and DEFENDANT TNC stood in relation as "employee" and "employer," respectively, within the meaning of the MHRA, specifically, Minn. Stat. Ann. § 363A.03.

85.    Under Minn. Stat. Ann. § 363A.08, subd. 2, "it is an unfair employment practice for an employer, because of . . . sex, . . . to: . . . (3) discriminate against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment."

86.    As set forth at length in the preceding paragraphs, DEFENDANTS TNC and SHAW discriminated against PLAINTIFFS with respect to their hiring, tenure, compensation, terms, upgrading, conditions, facilities, and/or privileges of employment of their employment because of their sex, female all in violation of the MHRA.

87.    DEFENDANT TNC caused and/or permitted sex-based discrimination by engaging in differential treatment of PLAINTIFFS, all of whom are women, even after PLAINTIFFS JESSICA BLAIR, CORISSA BUSSE, and SACHIKO GRABER complained of sex discrimination and harassment. Not only did DEFENDANT TNC fail to investigate PLAINTIFFS claims, its management and supervisory level employees were also extremely condescending and dismissive of PLAINTIFFS' concerns and claims (for example by stating PLAINTIFF SACHIKO GRABER was "combative and accusatory") regarding DEFENDANT TNC's failure to respond appropriately to previous complaints of unlawful conduct, and further admonishing this group to be "respectful and calm." These are only some examples.

88.    As a direct and proximate result of DEFENDANT TNC's conduct, PLAINTIFFS JESSICA BLAIR's and SACHIKO GRABER's working conditions were so intolerable that they felt compelled to resign, and a reasonable person in these PLAINTIFFS' positions would feel compelled to resign.

89.    As a result of DEFENDANT'S conduct, PLAINTIFFS JESSICA BLAIR and SACHIKO GRABER were directly and legally caused to suffer actual damages including but not limited to back pay and front pay, as well as the intangible loss of employment-related opportunities and other damages, all in an amount according to proof at trial.

90.    As a direct and proximate result of the wrongful acts of DEFENDANT TNC, PLAINTIFFS have suffered and continue to suffer emotional distress, humiliation, mental anguish and embarrassment. PLAINTIFFS are informed and believe and thereupon allege that they will continue to experience said suffering for a period in the future not presently ascertainable, all in an amount according to proof at trial.

91.    DEFENDANT TNC committed the acts set forth in this complaint despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring PLAINTIFFS, from an improper and evil motive amounting to malice, and in conscious disregard of PLAINTIFFS' rights to be free from discrimination. PLAINTIFFS are thus entitled to recover punitive damages from DEFENDANT TNC in an amount according to proof at trial.

92.    As a direct result of DEFENDANT TNC's violation of the MHRA, PLAINTIFFS have suffered and will continue to suffer loss of wages and benefits, have endured and will continue to endure emotional distress, impairment of reputation, personal humiliation, and mental anguish. Accordingly, PLAINTIFFS seek to recover all relief

available under the MHRA, including compensatory damages, an award of attorneys' fees and costs, as well as other fees and costs, including those related to experts, pursuant to Minn. Stat. § 363A.29, and appropriate injunctive and equitable relief.

**FIFTH CAUSE OF ACTION**

**Retaliation in Violation of Title VII against DEFENDANT TNC**

PLAINTIFFS JESSICA BLAIR and SACHIKO GRABER complain against DEFENDANT TNC and allege as follows:

93.    PLAINTIFFS re-allege and incorporate by reference each paragraph previously alleged in the Complaint as if fully set forth herein.

94.    At all times material herein PLAINTIFFS and DEFENDANT TNC stood in relation as "employee" and "employer," respectively, within the meaning of Title VII, specifically, 42 U.S.C. § 2000e(b) and (f).

95.    Under 42 U.S.C. § 2000e-(3), "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

96.    As set forth at length in the preceding paragraphs, DEFENDANT TNC retaliated against PLAINTIFFS JESSICA BLAIR and SACHIKO GRABER because they opposed practices made unlawful by Title VII, including sex discrimination and harassment, to which they and DEFENDANT TNC's other women employees were subjected in violation of Title VII.

97.    PLAINTIFF JESSICA BLAIR made reports of discrimination and

harassment to her supervisor on multiple occasions. PLAINTIFF SACHIKO GRABER made a formal complaint of discrimination and harassment and on the "Convercent" reporting system and in follow up communications with DEFENDANT TNC's Chapter Director. Following these protected complaints, JESSICA BLAIR and SACHIKO GRABER were subjected to working conditions that were so intolerable that a reasonable person in their positions would feel compelled to resign.

98.    PLAINTIFFS JESSICA BLAIR and SACHIKO GRABER were constructively discharged because of their protected complaints of discrimination and harassment.

99.    DEFENDANT TNC committed the acts set forth in this complaint despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring PLAINTIFFS, from an improper and evil motive amounting to malice, and in conscious disregard of PLAINTIFFS' rights to be free from discrimination. PLAINTIFFS are thus entitled to recover punitive damages from DEFENDANT TNC in an amount according to proof at trial.

100.    PLAINTIFFS JESSICA BLAIR and SACHIKO GRABER filed timely charges of retaliation with the EEOC. PLAINTIFFS JESSICA BLAIR and SACHIKO GRABER have exhausted their administrative remedies.

101.    As a direct result of DEFENDANT TNC's violation of Title VII, PLAINTIFFS JESSICA BLAIR and SACHIKO GRABER have suffered and will continue to suffer loss of wages and benefits, have endured and will continue to endure emotional distress, impairment of reputation, personal humiliation, and mental anguish. Accordingly, PLAINTIFFS JESSICA BLAIR and SACHIKO GRABER seek to recover all relief

available under Title VII, including compensatory damages, an award of attorneys' fees and

costs, as well as other fees and costs, including those related to experts, pursuant to 42 U.S.C.

§ 2000e-5 and appropriate injunctive and equitable relief.

**SIXTH CAUSE OF ACTION**

**Retaliation in Violation of the MHRA against DEFENDANT TNC**

PLAINTIFFS JESSICA BLAIR and SACHIKO GRABER complain against

DEFENDANT TNC and allege as follows:

102.   PLAINTIFFS re-allege and incorporate by reference each paragraph

previously alleged in the Complaint as if fully set forth herein.

103.   At all times material herein PLAINTIFFS and DEFENDANT TNC stood in

relation as "employee" and "employer," respectively, within the meaning of the MHRA,

specifically, Minn. Stat. Ann. § 363A.03.

104.   Under Minn. Stat. Ann. § 363A.015 "[i]t is an unfair discriminatory practice

for any individual who participated in the alleged discrimination as a perpetrator, employer

. . . or employee or agent thereof to intentionally engage in any reprisal against any person

because that person: (1) opposed a practice forbidden under this chapter or has filed a charge,

testified, assisted, or participated in any manner in an investigation, proceeding, or hearing

under this chapter; or (2) associated with a person or group of persons who are disabled or

who are of different race, color, creed, religion, gender identity, sexual orientation, or

national origin."

105.   As set forth at length in the preceding paragraphs, DEFENDANT TNC

retaliated against PLAINTIFFS JESSICA BLAIR and SACHIKO GRABER because they

opposed practices made unlawful by the MHRA, including sex discrimination and

harassment, to which they and DEFENDANT TNC's other women employees were subjected in violation of the MHRA.

106.    PLAINTIFF JESSICA BLAIR made reports of discrimination and harassment to her supervisor on multiple occasions. PLAINTIFF SACHIKO GRABER made a formal complaint of discrimination and harassment and on the "Convercent" reporting system and in follow up communications with DEFENDANT TNC's Chapter Director. Following these protected complaints, JESSICA BLAIR and SACHIKO GRABER were subjected to working conditions that were so intolerable that a reasonable person in their positions would feel compelled to resign.

107.    PLAINTIFFS JESSICA BLAIR and SACHIKO GRABER were constructively discharged because of the treatment they were subjected to after making protected complaints of discrimination and harassment.

108.    DEFENDANT TNC committed the acts set forth in this complaint despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring PLAINTIFFS, from an improper and evil motive amounting to malice, and in conscious disregard of PLAINTIFFS' rights to be free from discrimination. PLAINTIFFS are thus entitled to recover punitive damages from DEFENDANT TNC in an amount according to proof at trial.

109.    PLAINTIFFS JESSICA BLAIR and SACHIKO GRABER filed timely charges of retaliation with the EEOC and the Minnesota Department of Human Rights. PLAINTIFFS JESSICA BLAIR and SACHIKO GRABER have exhausted their administrative remedies.

110.    As a direct result of DEFENDANT TNC's violation of the MHRA,

PLAINTIFFS JESSICA BLAIR and SACHIKO GRABER have suffered and will continue to suffer loss of wages and benefits, have endured and will continue to endure emotional distress, impairment of reputation, personal humiliation, and mental anguish. Accordingly, PLAINTIFFS JESSICA BLAIR and SACHIKO GRABER seek to recover all relief available under the MHRA, including compensatory damages, an award of attorneys' fees and costs, as well as other fees and costs, including those related to experts, pursuant to Minn. Stat. § 363A.29, and appropriate injunctive and equitable relief.

**SEVENTH CAUSE OF ACTION**

**Intrusion Upon Seclusion Against DEFENDANT TNC and DEFENDANT SHAW**

All PLAINTIFFS complain against DEFENDANTS TNC and DEFENDANT SHAW and allege as follows:

111.    PLAINTIFFS re-allege and incorporate by reference each paragraph previously alleged in the Complaint as if fully set forth herein.

112.    PLAINTIFFS had a reasonable expectation of privacy over their private affairs or concerns including discussions of PLAINTIFFS' sexual activities and/or discussions of PLAINTIFFS' family members and their sexual activities. Moreover, they had a reasonable expectation of privacy in their solitude and seclusion over the images they posted on their private Facebook accounts and pictures of them which were taken at work, allegedly for marketing and/or other legitimate business purposes.

113.    DEFENDANT SHAW unlawfully intruded, physically or otherwise, upon PLAINTIFFS' solitude, seclusion and personal affairs when he: intentionally posted photos of PLAINTIFFS and/or commented about PLAINTIFFS on his pornographic social media accounts; took photos from PLAINTIFFS' personal Facebook accounts and reposted them

on his pornographic social media accounts; took photos of PLAINTIFFS during the course and scope of work and then posted those photos on his pornographic social media accounts; and/or created deepfake images of some PLAINTIFFS and attributed the images to PLAINTIFFS his pornographic social media accounts.

114.    As set forth above, as the Associate Chapter Director/Director of Conservation Science for DEFENDANT TNC's Tri-State Chapter at the time of the incidents described herein, DEFENDANT SHAW was acting in the course and scope of his employment in connection with the occurrences described herein, was PLAINTIFFS' supervisor, and was the proxy or alter-ego of DEFENDANT TNC; as such, DEFENDANT TNC is vicariously liable for DEFENDANT SHAW's conduct and actions.

115.    DEFENDANT DOUGLAS SHAW is also individually and personally responsible and liable for his tortious conduct, including his unlawful intrusion upon PLAINTIFFS' seclusion.

116.    A reasonable person would find DEFENDANT SHAW's intrusion into PLAINTIFFS' solitude, seclusion, and/or private concerns and affairs highly offensive.

117.    As a result of the above-described conduct, PLAINTIFFS, without their knowledge or consent, were featured on DEFENDANT SHAW'S pornographic social media photo sharing accounts.

118.    As a direct and proximate result of the wrongful acts of DEFENDANTS, PLAINTIFFS have suffered and will continue to suffer emotional distress, humiliation, mental anguish and embarrassment. PLAINTIFFS are informed and believe and thereupon allege that they will continue to experience said suffering for a period in the future not presently ascertainable, all in an amount according to proof at trial.

**EIGHTH CAUSE OF ACTION**

**Appropriation against DEFENDANT TNC and DEFENDANT SHAW**

All PLAINTIFFS complain against DEFENDANTS TNC and DEFENDANT SHAW and allege as follows:

119.   PLAINTIFFS re-allege and incorporate by reference each paragraph previously alleged in the Complaint as if fully set forth herein.

120.   DEFENDANT SHAW uploaded altered photographs that he attributed to PLAINTIFFS ANDREA BRANDON and CORISSA BUSSE by captioning the images with their names on his pornographic accounts on a photo and video sharing social media site.

121.   The images attributed to ANDREA BRANDON included but were not limited to: a pregnant woman masturbating, a woman engaging in sexual acts, and an image that appears to be ANDREA BRANDON posing naked in a tent. These images are either faceless photos that DEFENDANT SHAW falsely described as being photos of ANDREA BRANDON, or images that were altered to look like ANDREA BRANDON.

122.   The images attributed to CORISSA BUSSE included but were not limited to: an image that has been altered to make it look like CORISSA BUSSE has male ejaculate covering her face. DEFENDANT SHAW described this photo as CORISSA BUSSE "getting a facial at her birthday party."

123.   The images attributed to PLAINTIFFS JESSICA BLAIR, SACHIKO GRABER, and ALORA JONES were taken and/or uploaded without these PLAINTIFFS' consent and for DEFENDANT SHAW's own use and benefit.

124.   DEFENDANT SHAW uploaded the photographs for his use and benefit. The use and benefits include but are not limited to: DEFENDANT SHAW's sexual gratification

and his increased notoriety on a photo and video sharing social media site. DEFENDANT SHAW encouraged users to comment on these photos and directed users who commented on public photos of CORISSA BUSSE and ANDREA BRANDON to "friend" him and join his private and pornographic account(s) on the photo and video sharing social media site.

125.   As a direct and proximate result of the wrongful acts of DEFENDANTS, PLAINTIFFS ANDREA BRANDON and CORISSA BUSSE have suffered and will continue to suffer emotional distress, humiliation, mental anguish and embarrassment. PLAINTIFFS are informed and believe and thereupon allege that they will continue to experience said suffering for a period in the future not presently ascertainable, all in an amount according to proof at trial.

## NINTH CAUSE OF ACTION

### False Light Against DEFENDANT TNC and DEFENDANT SHAW

PLAINTIFF CORISSA BUSSE complains against DEFENDANT TNC and DEFENDANT SHAW and alleges as follows:

126.   PLAINTIFFS re-allege and incorporate by reference each paragraph previously alleged in the Complaint as if fully set forth herein.

127.   DEFENDANT SHAW in his individual capacity and as an agent of DEFENDANT TNC acting in the course and scope of his employment made a public disclosure by posting fake altered images and making comments about CORISSA BUSSE on his public and pornographic account(s) on a photo and video sharing social media site, including but not limited to: (1) a deepfake image of CORISSA BUSSE with male ejaculate covering her face that DEFENDANT SHAW titled "Corissa's 30th birthday party…got a little out of hand." and (2) a photo of CORISSA BUSSE about which DEFENDANT SHAW

commented that she "has a wild side," which a reasonable person would understand to mean CORISSA BUSSE engages in fetish and/or kink sexual activity given the context of DEFENDANT SHAW's pornographic account on a photo and video sharing social media site.

128.    These comments were false and the images were altered and/or untrue and placed CORISSA BUSSE in a false light that would be highly offensive to a reasonable person.

129.    DEFENDANT SHAW in his individual capacity and as an agent of DEFENDANT TNC had knowledge of the publicized facts and the false light in which CORISSA BUSSE would be placed and/or acted negligently in failing to learn whether the publicized fact placed plaintiff in a false light.

130.    As a direct and proximate result of DEFENDANT SHAW and DEFENDANT TNC's public disclosure, CORISSA BUSSE has suffered and will continue to suffer emotional distress, humiliation, mental anguish and embarrassment. PLAINTIFF CORISSA BUSSE is informed and believes and thereupon alleges that she will continue to experience said suffering for a period in the future not presently ascertainable, all in an amount according to proof at trial.

## TENTH CAUSE OF ACTION

### Defamation Against DEFENDANT TNC and DEFENDANT SHAW

PLAINTIFFS ANDREA BRANDON and CORISSA BUSSE complain against DEFENDANT TNC and DEFENDANT SHAW and allege as follows:

131.    PLAINTIFFS ANDREA BRANDON, and CORISSA BUSSE re-allege and incorporate by reference each paragraph previously alleged in the Complaint as if fully set

1    forth herein.

2    132.    As set forth above, as the Associate Chapter Director/Director of Conservation

3    Science for DEFENDANT TNC's Tri-State Chapter at the time of the incidents described

4    herein, DEFENDANT SHAW was acting in the course and scope of his employment in

5    connection with the occurrences described herein, was PLAINTIFFS' supervisor, and was

6    the proxy or alter-ego of DEFENDANT TNC; as such, DEFENDANT TNC is vicariously

7    liable for DEFENDANT SHAW's conduct and actions.

8    133.    DEFENDANT SHAW is also individually and personally liable and

9    responsible for his unlawful conduct.

10    134.    As set forth above, DEFENDANTS have made a number of false statements

11    regarding PLAINTIFFS, including by intentionally publishing altered photographic or video

12    images and false comments about PLAINTIFFS' alleged sexual proclivities onto

13    DEFENDANT SHAW'S social media accounts for the purpose of communicating the

14    content to third parties, including his social media followers and/or other members of the

15    public.

16    135.    The false comments and altered images of PLAINTIFFS which were publicly

17    available on the internet and continued to be available up at least through September 2022

18    included, but were not limited to:

19    -    A photo of ANDREA BRANDON canoeing with her husband during a work

20    trip to the field in Minnesota, which DEFENDANT SHAW took during the

21    course and scope of his work and originally posted on or about July 22, 2016

22    to his publicly accessible social media account, and which he falsely

23    commented "That's Andrea's now husband…. The three of us and my wife

have a complicated but fun relationship";

- A photo of ANDREA BRANDON kissing DEFENDANT SHAW's wife on the cheek at an event in Minnesota, which DEFENDANT SHAW took and originally posted to his publicly accessible social media account on or about August 20, 2016, and about which he falsely commented "Andrea and [DEFENDANT SHAW's wife's name] have had sex many times. I believe they did later the night of this photo. Occasionally, they let me join them. Lol.";

- Several deepfake photos of ANDREA BRANDON or faceless photos DEFENDANT SHAW falsely attributed to ANDREA BRANDON, including but not limited to: a pregnant woman masturbating, a woman engaging in sexual acts, and an image that appears to be Ms. BRANDON posing naked in a tent;

- A deepfake photo of CORISSA BUSSE falsely portraying ejaculate covering her face, which DEFENDANT SHAW originally uploaded to his publicly accessible social media account on or about June 27, 2022, and which DEFENDANT SHAW titled "Corissa's 30th birthday party… got a little out of hand. . . .";

- A photo of CORISSA BUSSE at work in DEFENDANT TNC's office, which DEFENDANT SHAW took in the course and scope of his work and posted to his publicly accessible social media account, and about which DEFENDANT SHAW had an exchange with another user in approximately late 2020 during which the other user asked, "Do you have any of her nude,

she is enchanting" and DEFENDANT SHAW responded with a false representation that stated: "No, not nude, but I do have one of her getting a facial at her birthday party. It's in my album 'Friday night parties'";

- A photo of CORISSA BUSSE, which DEFENDANT SHAW took at work and posted to his publicly accessible social media account, and about which DEFENDANT SHAW commented "Corissa is a gem! She also has a wild side."

136.    The foregoing statements made and images/videos posted by DEFENDANTS constitute defamation.

137.    DEFENDANTS communicated, disseminated, or published the foregoing false statements and images/videos to persons other than PLAINTIFFS.

138.    The subject statements and images/videos are false, and DEFENDANT published them at a time they knew, or should have known, that they were false.

139.    DEFENDANTS knew or should have known that the subject statements and images/videos would harm PLAINTIFFS' professional reputations or lower their estimation in the community.

140.    The recipients of the statements and/or images/videos reasonably understood that they referred to specific individuals, namely PLAINTIFFS.

141.    Because the subject statements and/or images/video affect PLAINTIFFS in their business or profession, constitute accusations of serious sexual misconduct and/or constitute accusations of crimes involving moral turpitude, they constitute defamation per se.

142.    As a direct result of DEFENDANTS' defamation, PLAINTIFFS have

suffered, and will continue to suffer, emotional distress, humiliation, embarrassment, loss of reputation, loss of enjoyment of life, lost wages and benefits, and have incurred other damages all in an amount to be proven at trial.

**ELEVENTH CAUSE OF ACTION**

**Intentional Infliction of Emotional Distress Against
DEFENDANT TNC and DEFENDANT SHAW**

All PLAINTIFFS complain against DEFENDANT TNC and DEFENDANT SHAW and allege as follows:

143.   PLAINTIFFS re-allege and incorporate by reference each paragraph previously alleged in the Complaint as if fully set forth herein.

144.   DEFENDANT SHAW engaged in intentional or reckless behavior including but not limited to posting and maintaining his pornographic account(s) on a photo and video sharing social media site and treating PLAINTIFFS in a discriminatory and harassing manner that was so extreme and outrageous that it passed the boundaries of decency and is utterly intolerable to the civilized community.

145.   DEFENDANT TNC engaged in intentional or reckless behavior including but not limited to continuing to employ DEFENDANT SHAW with the knowledge of his hostile behavior towards PLAINITFFS, not adequately investigating PLAINTIFFS' complaints, all of which was so extreme and outrageous that it passed the boundaries of decency and is utterly intolerable to the civilized community.

146.   DEFENDANT TNC and/or DEFENDANT SHAW's conduct was intentional or reckless.

147.   DEFENDANT TNC and/or DEFENDANT SHAW's conduct caused

emotional distress to PLAINITFFS that was so severe that no reasonable person could be expected to endure it.

148.    As a result of DEFENDANT SHAW and/or DEFENDANT TNC's actions, PLAINTIFFS sustained damages.

**TWELFTH CAUSE OF ACTION**

**Negligent Infliction of Emotional Distress Against DEFENDANT TNC and DEFENDANT SHAW**

PLAINTIFFS complain against DEFENDANT TNC and DEFENDANT SHAW and allege as follows:

149.    PLAINTIFF re-allege and incorporate by reference each paragraph previously alleged in the Complaint as if fully set forth herein.

150.    DEFENDANT SHAW and DEFENDANT TNC failed to utilize the same standard of care as a reasonable person or organization in the same or similar circumstances.

151.    The conduct caused emotional distress to PLAINTIFFS.

152.    The distress was so severe that no reasonable person could be expected to endure it.

153.    As a result of DEFENDANT SHAW and/or DEFENDANT TNC's actions, PLAINTIFFS sustained damages.

**THIRTEENTH CAUSE OF ACTION**

**Negligent Retention and Supervision in Violation of Minnesota Common Law against DEFENDANT TNC**

PLAINTIFFS complain against DEFENDANT TNC and allege as follows:

154.    PLAINTIFFS re-allege and incorporate by reference each paragraph

previously alleged in the Complaint as if fully set forth herein.

155.   DEFENDANT TNC had a duty to refrain from retaining employees with known dangerous proclivities or propensities.

156.   As set forth at length in the preceding paragraphs, DEFENDANT TNC knew or should have known that its employee and agent, DEFENDANT SHAW, was volatile, aggressive, and/or sexually inappropriate, that he had a propensity to expose his women colleagues, including PLAINTIFFS, to unwelcome sexual conduct or communications of a sexual nature, that he posed a threat of physical injuries and/or severe mental anguish to other employees, and/or that he was otherwise unfit for employment with DEFENDANT TNC.

157.   Illustrative, but by no means exhaustive, examples of DEFENDANT TNC's knowledge of DEFENDANT SHAW's dangerous proclivities or propensities include the following: PLAINTIFF JESSICA BLAIR made reports of DEFENDANT SHAW's discrimination and harassment to her supervisor on multiple occasions, but no preventative or corrective actions were taken. PLAINTIFF CORISSA BUSSE made complaints of DEFENDANT SHAW's discrimination and harassment to her male supervisor on multiple occasions over roughly seven years, but no preventative or corrective actions were taken. In mid-September 2022, CORISSA BUSSE also reported to the Tri-State Chapter Director her concerns about DEFENDANT SHAW traveling with women subordinates, but no preventative or corrective actions were taken. Additionally, PLAINTIFF SACHIKO GRABER made a formal complaint of DEFENDANT SHAW's discrimination and harassment on the "Convercent" reporting system and in follow up communications with DEFENDANT TNC's Tri-State Chapter Director, but no preventative or corrective actions

were taken. Additionally, DEFENDANT TNC unreasonably failed to improve its procedures and policies following an outside law firm's "investigation" into reports of sex harassment in or about 2019, when DEFENDANT SHAW was employed.

158.    Despite the foregoing knowledge, DEFENDANT TNC failed to exercise reasonable care in supervising its employment relationship with DEFENDANT SHAW and failed to take reasonable action, including but not limited to investigation, reassignment, or discharge, that would have protected PLAINTIFFS and prevented their injuries.

159.    As a direct result of DEFENDANT TNC's negligent retention and supervision of DEFENDANT SHAW, PLAINTIFFS have suffered and will continue to suffer loss of wages and benefits, have endured and will continue to endure emotional distress and loss of enjoyment of life, and have incurred other damages all in an amount to be proven at trial.

## DAMAGES

160.    PLAINTIFFS suffered emotional distress and economic damages as a legal result of the conduct by Defendants of which PLAINTIFF complains. PLAINTIFFS suffered mental distress, suffering and anguish as a legal result of DEFENDANTS' outrageous conduct, reacting to their treatment at work with humiliation, embarrassment, anger, disappointment and worry, all of which is substantial and enduring.  PLAINTIFFS will seek leave to amend this complaint to state the amount or will proceed according to proof at trial.

161.    DEFENDANTS, and each of them, acted oppressively, fraudulently, and maliciously, in willful and conscious disregard of PLAINTIFFS' rights, and with the intention of causing or in reckless disregard of the probability of causing injury and emotional distress to the PLAINTIFFS.

162.    Further, DEFENDANTS were informed of the oppressive, fraudulent, and

1  malicious conduct of their employees, agents and subordinates, and ratified, approved, and

2  authorized that conduct.

3     163.   The foregoing conduct of DEFENDANTS, and each of them, was intentional,

4  willful and malicious and PLAINTIFFS is entitled to punitive damages against

5  DEFENDANT TNC and DEFENDANT SHAW in an amount to conform to proof.

6     164.   PLAINTIFF also is entitled to attorneys' fees and costs pursuant to 42 U.S.C.

7  § 2000e-5, Minn. Statute § 363A.29, as permitted by law, and as prayed for below.

8                          **INJUNCTIVE RELIEF**

9     165.   PLAINTIFFS have suffered irreparable injury and immediate harm due to

10  DEFENDANTS' acts.  PLAINTIFFS have no other legal remedy. In addition to the other

11  relief requested in this Complaint, PLAINTIFFS seek injunctive relief to ensure that

12  DEFENDANTS do not discriminate against and/or harass them and other employees

13  because of their sex/gender, and that DEFENDANTS do not retaliate against them and other

14  employees because they complained about the discriminatory and harassing conduct.

15                          **PRAYER FOR RELIEF**

16     WHEREFORE, PLAINTIFFS pray for the following relief:

17     a.    A declaratory judgment that the practices complained of herein are unlawful

18  and violate Title VII, 42 U.S.C. §2000e et seq. and the Minnesota Human Rights Act a.k.a.

19  Minn. Stat. Ann. § 363A et seq.

20     b.    A permanent injunction against DEFENDANT TNC and its officers, agents,

21  successors, employees, representatives, and any and all persons acting in concert with

22  DEFENDANT TNC, prohibiting them from engaging in unlawful sex discrimination, sex

23  harassment, and/or retaliation against employees or applicants for employment, including

1  on the basis of sex and ordering them to remove from social media all images and photos of

2  PLAINTIFFS  on any accounts over which DEFENDANT SHAW exercises any control.

3        c.     Back pay and front pay (including interest and benefits), according to proof,

4  and other affirmative relief necessary to eradicate the effects of DEFENDANTS TNC AND

5  DOUGLAS SHAW'S unlawful employment practices;

6        d.     Compensatory, emotional distress, reputation and punitive damages;

7        e.     Reasonable attorneys' fees and all expenses and costs of this action;

8        f.     Pre-judgment interest; and

9        g.     Such other and further legal and equitable relief as this Court deems necessary,

10  just, and proper.

11  Dated: April 30, 2024       By:    /s/ Therese Lawless
                       THERESE M. LAWLESS (CA Bar # 127341)*

12                         EMILY S. McGRATH (CA Bar # 289624)*
                       SINCLAIRE M. PARER (CA Bar # 346148)*

13                         **LAWLESS, LAWLESS & McGRATH**
                       354 Pine Street, Fourth Floor

14                         San Francisco, CA 94104
                       Telephone:  (415) 391-7555

15                         Facsimile:  (415) 391-4228

16                         tlawless@lawlesssf.com
                       emcgrath@lawlesssf.com

17                         sparer@lawlesssf.com

18                         *pro hac vice* application forthcoming
                       *Attorneys for Plaintiffs*

19  ///

20  ///

21  ///

22  ///

23  ///

**LOCAL COUNSEL:**

Dated: April 30, 2024          By:   /s/ Christopher Moreland

Christopher Moreland (MN Bar # 0278142)
Amy Boyle (MN Bar #0392635)
MSB Employment Justice LLP
6400 Flying Cloud Dr. Ste. 215
Minneapolis, MN 55344
Telephone: 612-677-2352
cmoreland@MSBJUSTICE.COM
aboyle@MSBJUSTICE.COM

**DEMAND FOR JURY TRIAL**

PLAINTIFFS demand a trial by jury of all issues so triable in this action.

Dated: April 30, 2024          By:     /s/ Therese Lawless

THERESE M. LAWLESS (CA Bar # 127341)*
EMILY S. McGRATH (CA Bar # 289624)*
SINCLAIRE M. PARER (CA Bar # 346148)*
**LAWLESS, LAWLESS & McGRATH**
354 Pine Street, Fourth Floor
San Francisco, CA 94104
Telephone:  (415) 391-7555
Facsimile:   (415) 391-4228
tlawless@lawlesssf.com
emcgrath@lawlesssf.com
sparer@lawlesssf.com

*pro hac vice* application forthcoming
*Attorneys for Plaintiffs*
**LOCAL COUNSEL:**

Dated:  April 30, 2024          By:     /s/ Christopher Moreland

Christopher Moreland (MN Bar #0278142)
Amy Boyle (MN Bar #0392635) MSB
Employment Justice LLP 6400 Flying
Cloud Dr. Ste. 215
Minneapolis, MN 55344
Telephone: 612-677-2352
cmoreland@MSBJUSTICE.COM
aboyle@MSBJUSTICE.COM

COMPLAINT FOR DAMAGES