UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Doe One, *et al.*, | Case No. 24-cv-1570 (JWB/SGE) |
| Plaintiffs, | |
| v. | **ORDER** |
| The Nature Conservancy, *et al.*, | |
| Defendants. | |

This matter is before the Court on Plaintiffs' Motion for Leave to File First Amended Complaint (Dkt. 71). As set forth below, this Court will grant in part and deny in part the Plaintiffs' motion.

## BACKGROUND

Defendant Douglas Shaw was the Associate Director of the Tri-State Chapter (covering Minnesota, South Dakota, and North Dakota) of Defendant The Nature Conservancy ("TNC"). Each individual Plaintiff was a female coworker and TNC employee subordinate to Shaw. During Shaw's time at TNC, he took numerous photos of Plaintiffs while they were working in the scope of their employment. Shaw then took some of those photos, as well as photos off of Plaintiffs' social media profiles, and created "false and sexually explicit photographs and comments about several Plaintiffs and others on a video and photo sharing social media site." (Compl. ¶ 31, Dkt. 1.) These included images of the Plaintiffs in swimsuits, images from angles that showed cleavage, and deepfake

images of the Plaintiffs engaged in sexual activities. Plaintiffs also allege that Shaw made or invited sexually explicit comments about Plaintiffs on social media.

## PROCEDURAL BACKGROUND

Plaintiffs filed the instant suit on May 1, 2024, asserting claims of sexual harassment, sex discrimination, and retaliation in violation of Title VII, 42 U.S.C. § 2000e, as well as the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.03; intrusion upon inclusion against; appropriation; false light; defamation; intentional infliction of emotional distress ("IIED"); negligent infliction of emotional distress ("NIED"); and negligent retention and supervision against TNC. (Compl.)

On January 22, 2025, the Honorable District Court Judge Jerry W. Blackwell heard oral argument on two motions to dismiss—TNC's Motion to Dismiss (Dkt. 39) and Shaw's Motion to Dismiss Counts VII and IX-XII (Intrusion Upon Seclusion; False Light; Defamation; IIED; and NIED) (Dkt. 27). At the hearing, Judge Blackwell granted-in-part and denied-in part Defendants' motions. Specifically, the court granted Shaw's motion to dismiss (1) Plaintiff Corissa Busse's false light claim; (2) Plaintiffs Andrea Brandon's and Ms. Busse's defamation claims to the extent that three identified statements were made outside the statute of limitations; (3) Plaintiffs' IIED claim; and (4) Plaintiffs' NIED claim. (Dkt. 66.) The court also granted-in-part and denied-in-part TNC's motion to dismiss several of Plaintiffs' claims, including specifically Plaintiffs' claim for negligent retention and supervision. Judge Blackwell dismissed these claims without prejudice. (*See* Dkt. 66.)

Plaintiffs now move for leave to file an Amended Complaint. Specifically, Plaintiffs seek to remedy the deficiencies that Judge Blackwell found in their claims for false light, defamation, IIED, NIED, and negligent retention and supervision.

## ANALYSIS

### I.  Legal Standard

The Federal Rules provide that courts should "freely give leave" to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). This forgiving standard does not, however, give parties an absolute right to amend their claim for any reason at any time. *See Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008). Courts can deny a motion to amend for "compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Id.* (cleaned up).

Additionally, courts should deny leave to amend a complaint where the amendment would be futile. *Geier v. Mo. Ethics Comm'n*, 715 F.3d 674, 678 (8th Cir. 2013). An amendment is futile where the proposed claim "could not withstand a motion to dismiss under Rule 12(b)(6)." *Silva v. Metropolitan Life Ins. Co.*, 762 F.3d 711, 719 (8th Cir. 2014) (citation omitted). "To survive a motion to dismiss for failure to state a claim, the complaint must show the plaintiff 'is entitled to relief,' Fed. R. Civ. P. 8(a)(2), by alleging 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1063 (8th Cir. 2017) (en banc) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). On a motion to dismiss, the court must take all of the plaintiff's allegations as true, but "[t]hreadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (quoting *Bell. Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).

## II.     Plaintiffs' Proposed Amended Claims

### A. False Light

The "false light" tort is a common law cause of action that protects individuals from being portrayed in a false or misleading way that would be highly offensive to a reasonable person. Restatement (2d) of Torts § 652A(2)(d). Judge Blackwell dismissed Plaintiffs' false light claim from the original Complaint without prejudice. (Dkt. 66.) He noted that the Complaint only minimally tied Ms. Busse to South Dakota, which recognizes the false light tort. (See Hr'g Tr. 46-47, Dkt. 70.)

Plaintiffs' Proposed Amended Complaint addresses this deficiency. According to the Amended Complaint, Ms. Busse is and was a South Dakota resident, she worked in the South Dakota TNC office, and she interacted with Shaw while they were in South Dakota. (Am. Compl. ¶ 8, Dkt. 75 Exs. B & C.) This includes Shaw taking photos of Ms. Busse in South Dakota, interacting with her while on overnight trips in South Dakota, and posting images online that he took of Ms. Busse in South Dakota. (*Id.*) Plaintiffs further allege that the harm to Ms. Busse's reputation occurred in South Dakota.

Plaintiffs argue that South Dakota law should apply to the false light claim. Defendants disagree, arguing Minnesota law should control. Before performing a choice-of-law analysis, a court must determine whether there is a conflict between the laws of the two states at issue. *Nodak Mut. Ins. Co. v. Am. Fam. Mut. Ins. Co.*, 604 N.W.2d 91, 93-94 (Minn. 2000). Minnesota does not recognize false light as a tort. *Lake v. Wal-Mart Stores,*

4

*Inc.*, 582 N.W.2d 231, 235-36 (Minn. 1998). The parties agree that South Dakota does recognize the tort. *See Montgomery Ward v. Shope*, 286 N.W.2d 816, 808 n.1 (S.D. 1979).

Because there is a conflict between Minnesota and South Dakota laws, the court must perform a choice-of-law analysis. Federal courts exercising supplemental jurisdiction over state law claims apply the forum state's—Minnesota's—choice of law rules to select the applicable state substantive law. *E.g.*, *Mainville v. College Town Pizza, Inc.*, 629 F. Supp. 3d 913, 920 (D. Minn. 2022) (citing *CPI Card Grp., Inc. v. Dwyer*, 294 F. Supp. 3d 791, 813 (D. Minn. 2018)). Minnesota uses a three-step choice of law analysis. *See, e.g.*, *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1123-24 (8th Cir. 2012).

First, the parties agree that the choice between applying Minnesota law and applying South Dakota law would be outcome determinative. Under Minnesota law, Ms. Busse could not assert the claim; under South Dakota law, she could. Second, neither party has disputed that either state's law could be constitutionally applied.

The third step requires an application of a five-factor test, considering the: (1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law. *Blake Marine Grp. v. CarVal Investors LLC*, 829 F.3d 592, 596 (8th Cir. 2016).

### i. Predictability of Result

The predictability factor addresses "whether the choice of law was predictable before the time of the . . . event giving rise to the cause of action." *Danielson v. Nat'l Supply Co.*, 670 N.W.2d 1, 7 (Minn. Ct. App. 2003). "The objective of the predictability

factor is to fulfill the parties' justified expectations." *Lommen v. City of E. Grand Forks*, 522 N.W.2d 148, 150 (Minn. Ct. App. 1994). This factor "is most relevant when parties have expectations about the applicable law, such as in 'consensual transactions where people should know in advance what law will govern their act,' but has less relevance in cases such as accidents when the parties could not reasonably have such expectations." *Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386,1394 (8th Cir. 1997) (quoting *Milkovich v. Saari*, 203 N.W.2d 408, 412 (Minn. 1973)).

Shaw argues that this factor favors finding that Minnesota law applies because Shaw is a Minnesota citizen and naturally expects that claims against him will be applying Minnesota law. Shaw relies on *Northwest Airlines v. Astraea Aviation Services*, 111 F.3d 1386 (8th Cir. 1997). There, the Eighth Circuit determined in relevant part that it was unlikely that Minnesota-based Northwest expected Texas law to apply to statements that it made to a Minnesota newspaper. *Id.* at 1394. The comparison is somewhat apt; Shaw is a Minnesota citizen who expected that any statements he made (including allegedly false-light AI-generated pornographic images and false sexual statements about his co-workers) would be subject to and analyzed under Minnesota law. However, the *Northwest Airlines* court found that defamatory statements "contained in the [Texas] newspaper articles were made in Minnesota to a local newspaper, were first published in Minnesota, and involved the performance of contracts that the parties had agreed would be governed by Minnesota law." *Id.* And the fact that TNC is a Minnesota company creates a reasonable presumption that Minnesota law will apply to torts arising from the relationship between Ms. Busse and

6

her supervisor at TNC. All of this pointed to the application of Minnesota rather than Texas law.

Here, though, the conduct underlying the alleged tort occurred in both Minnesota and South Dakota. Shaw interacted with Ms. Busse while at work in South Dakota and took photographs of her while at work. Shaw knew that his acts—both the photographs he took and the statements he made—concerned an individual in South Dakota. Unlike the parties in *Northwest Airlines*, there was no contract governing the relationship between Shaw and Ms. Busse. Shaw's actions (1) were directed towards an individual who lived and worked in South Dakota, (2) sometimes occurred in South Dakota, and (3) are alleged to have caused damage in South Dakota. Although it is a close call, this Court determines that this factor favors the application of South Dakota law.

### ii. Interstate and International Order

The second factor, maintenance of interstate and international order, is "primarily concerned with whether the application of Minnesota law would manifest disrespect for [another state's] sovereignty or impede the interstate movement of people and goods." *Blake*, 829 F.3d at 595 (citation omitted). This factor usually applies to prevent forum shopping. "[W]here a state has little or no contact with a case and nearly all of the significant contacts are with a sister state, the factor suggests that a state should not apply its own law to the dispute." *Burks v. Abbott Labs.*, 639 F. Supp. 2d 1006, 1013 (D. Minn. 2009) (cleaned up). That said, the strongest state interest typically follows the state with the most significant contacts with the facts relevant to the litigation, *see In re Baycol*

*Products Litig.*, 218 F.R.D. 197, 207 (D. Minn. 2003), as well as the state where the plaintiff is domiciled and allegedly sustained the harm, *see Blake Marine*, 829 F.3d at 596.

This factor is largely neutral. The allegations include events that took place in both Minnesota and South Dakota, including the parties' residences, workplaces, and where Shaw took the photographs. The parties had roughly equal contact with both states, and forum shopping does not appear to be an issue.

### iii.  Simplification of the Judicial Task

The third factor, simplification of the judicial task, "is often considered insignificant because courts can as easily apply another state's law as their own." *Medtronic, Inc. v. Advanced Bionics Corp.*, 630 N.W.2d 438, 455 (Minn. Ct. App. 2001). This factor is neutral—this Court would not experience any challenges applying either Minnesota or South Dakota law.

### iv.  Advancement of the Forum's Governmental Interest

The fourth factor, advancement of the forum's governmental interest, requires analysis not only of Minnesota's governmental interests, but also of South Dakota's public policy. *Blake Marine*, 829 F.3d at 596 (quoting *Nesladek v. Ford Motor Co.*, 46 F.3d 734, 739 (8th Cir. 1995)). Shaw points to Minnesota's governmental interest in protecting its citizens' right to free speech, and Plaintiffs lean on South Dakota's interest in compensating Ms. Busse, a South Dakota resident who suffered harm in South Dakota.

Generally, this factor weighs in favor of application of the state law in which the plaintiff lives and in which the injury occurred, which would favor applying South Dakota law. *Johannessohn v. Polaris Indus., Inc.*, 450 F. Supp. 3d 931, 965 (D. Minn. 2020)

(quoting *In re Baycol*, 218 F.R.D. at 207), *aff'd*, 9 F.4th 981 (8th Cir. 2021). This must be balanced against Minnesota's interest in protecting its citizens' free speech rights. *See Lake*, 582 N.W.2d at 236 (stating concern "that false light inhibits free speech guarantees provided by the First Amendment"). Minnesota also, however, has an interest "to see that tort victims are fully compensated." *Bigelow v. Halloran*, 313 N.W.2d 10, 12-13 (Minn. 1981) (applying a different state's statute of limitations to provide claimant a path to recovery). Taking all of the above into consideration, the Court determines that this factor favors applying South Dakota law to Ms. Busse's false light claim.

### v. Application of the Better Rule of Law

Finally, the last factor "should be applied only when the choice-of-law question remains unresolved after the other factors are considered." *Medtronic*, 630 N.W.2d at 455. The better rule of law is "the rule that made good socio-economic sense for the time when the court speaks." *Jepson v. Gen. Cas. Co. of Wis.*, 513 N.W.2d 467, 473 (Minn. 1994) (cleaned up). Like the third factor, this plays a lesser part and should only tip the scales when the remaining factors leave the outcome uncertain. *See Fredin v. City Pages*, Case no. 19-cv-472 (DWF/TNL), 2020 WL 3064721, at *6 (D. Minn. May 19, 2020) (the Court must address "[c]oncern for the 'better law' . . . only when other choice-influencing considerations leave the choice of law uncertain.") (quoting *Myers v. Gov't Emp. Ins.*, 225 N.W.2d 238, 244 (Minn. 1974)). Because the factors above resolve the choice-of-law question, this Court need not apply this factor.

### vi. Choice-of-law Conclusion

Ultimately, the choice-of-law analysis favors applying South Dakota law to Ms. Busse's false light claim against Shaw. As such, allowing Plaintiffs leave to amend the Complaint as proposed is not futile, and the motion will be granted as it relates to Ms. Busse's false light claim against Shaw.

### B. Defamation and IIED

Mr. Shaw does not oppose Plaintiffs' proposed amendments to their defamation or IIED claims. (Opp'n Mem. at 3 n.3, Dkt. 77.) TNC also does not oppose these proposed amendments. (Dkt. 78.) Based on the allegations in the Proposed Amended Complaint, Plaintiffs' claims for defamation and IIED are not futile. Plaintiffs' Motion for Leave to Amend will be granted as it relates to these claims.

### C. Negligent Infliction of Emotional Distress

To establish a claim for negligent infliction of emotional distress, Plaintiffs must show they were (1) within a zone of danger of physical impact; (2) reasonably feared for their own safety; and (3) consequently suffered severe emotional distress with attendant physical manifestations. *K.A.C. v. Benson*, 527 N.W.2d 553, 557 (Minn. 1995).

Plaintiffs argue that "[a]n exception to the 'zone of danger' rule is that a plaintiff may recover damages for mental anguish or suffering for a direct invasion of his rights, such as defamation, malicious prosecution, or other willful, wanton or malicious conduct." *Bohdan v. Alltool Mfg., Co.*, 411 N.W.2d 902, 907 (Minn. Ct. App. 1987) (citing *State Farm Mut. Auto. Ins. Co. v. Village of Isle*, 122 N.W.2d 36, 41 (1963); *Kamrath v. Suburban Nat'l Bank*, 363 N.W.2d 108, 111 (Minn. Ct. App. 1985)). In 2023, the Eighth Circuit reviewed this exception and determined that it was "highly improbable that the

Minnesota Supreme Court would recognize this exception" to the zone-of-danger requirement. *Yang v. Robert Half Int'l, Inc.*, 79 F.4th 949, 963 (8th Cir. 2023). After reviewing Minnesota and Minnesota District Court case law, the Eighth Circuit "predict[ed] the Minnesota Supreme Court would not abandon the zone of danger requirement . . . ." *Id.* at 964. For example, in *Stadler v. Cross*, the Minnesota Supreme Court did not extend liability for negligent infliction of emotional distress where the plaintiff was not in a zone of danger. 295 N.W.2d 552, 555 (Minn. 1980). Furthermore, courts in this district have found *Bohdan* to be directly at odds with the Minnesota Supreme Court's decision to retain the zone-of-danger requirement. *See Meyer v. Tenvoorde Motor Co.*, 714 F. Supp. 991, 994-96 (D. Minn. 1989) (determining that the *Bohdan* exception "create[s] a parasitic cause of action which is unnecessary and inappropriate"); *Armstrong v. Target Corp.*, Case no. 10-cv-1340 (RHK/SRN), 2010 WL 4721062, at *5 (D. Minn. Nov. 15, 2012) (following *Meyer*). This Court agrees with the Eighth Circuit that the Minnesota Supreme Court would likely not recognize the *Bohdan* exception to the zone-of-danger requirement. The added allegations in the Amended Complaint do not allege that the Plaintiffs were in a zone of danger of physical impact. Accordingly, the proposed amendment is futile because the Amended Complaint fails to state a claim for negligent infliction of emotional distress, and the motion should be denied as it relates to this claim.

### D. Negligent Supervision & Retention

Negligent retention occurs when "during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge,

11

or reassignment" *Mandy v. Minn. Mining & Mfg.*, 940 F. Supp. 1463, 1470 (D. Minn. 1996) (quoting *Yunker v. Honeywell, Inc.*, 496 N.W.2d 419, 423 (Minn. Ct. App. 1993)). Negligent supervision is "the failure of the employer to exercise ordinary care in supervising the employment relationship so as to prevent the foreseeable misconduct of an employee causing harm to others." *Mandy*, 940 F. Supp. at 1471.

The doctrine of negligent hiring or retention allows for recovery where the employee commits an intentional tort, rather than mere negligence. *See, e.g.*, *Brown v. Thompson*, Case no. 08-cv-6323 (ADM/RLE), 2009 WL 10711896, at *6 (D. Minn. Apr. 17, 2009); *Bruchas v. Preventive Care, Inc.*, 553 N.W.2d 440, 442 (Minn. Ct. App. 1996) ("This theory of recovery imposes liability for an employee's intentional torts . . . ."); *see also McLemore v. Holiday Stationstores, Inc.*, Case no. 02-cv-4335 (ADM/AJB), 2004 WL 2092012 at *6 (D. Minn., Sept. 17, 2004) (the theories of negligent hiring and retention "are intended to protect others from the intentional torts of an employer's employees," and "Plaintiff's claims must fail as he has failed to proffer any evidence that an intentional tort was committed against him."). The case law does not, however, foreclose the possibility of such a claim based on negligence. *Brown*, 2009 WL 10711896, at *6; *Cook v. Greyhound Lines, Inc.*, 847 F. Supp. 725, 734 (D. Minn. 1994) (declining to preclude assertion of negligent retention at the pleadings stage).

Judge Blackwell dismissed Plaintiffs' negligent retention and negligent supervision claims without prejudice in the original Complaint because they had not adequately pleaded that TNC knew or should have known that Shaw posed a threat of physical injury.

12

(See Hr'g Tr. 63:11-15, Dkt. 70.) Plaintiffs attempt to address this deficiency by adding the following allegations to the proposed Amended Complaint:

- ¶ 23: "DEFENDANT SHAW directed at least one manager at TNC to look at his Flickr account and to find photos that could be used for donor communications."

- ¶ 29: "In approximately late 2019, a manager at TNC complained directly to DEFENDANT SHAW that he was acting inappropriately with ANDREA BRANDON. The manager stated that she and other employees in the office had observed his inappropriate behavior and were uncomfortable with the excessive attention he was paying to ANDREA BRANDON and other young women. This manager also warned women at the TriState Chapter against traveling with DEFENDANT SHAW. This manager also complained to the TriState Chapter Director at the time about DEFENDANT SHAW's inappropriate behavior with ANDREA BRANDON and other young women at work. The Chapter Director stated she was aware of the issue. This manager feared DEFENDANT SHAW would resort to violence upon being confronted about his misconduct."

- ¶ 173: "DEFENDANT TNC knew or should have known that DEFENDANT SHAW posed a threat of physical harm. An illustrative, but not exhaustive, example is that multiple managers recognized the danger DEFENDANT SHAW posed to women in the organization and cautioned multiple women against traveling with DEFENDANT SHAW. Nevertheless, PLAINTIFFS were required to attend overnight trips with DEFENANT SHAW. Additionally, at least one manager feared DEFENDANT SHAW would resort to violence upon being confronted about his behavior."

(Parer Decl., Ex. B, Dkt. 75.) TNC does not oppose Plaintiffs' proposed amendments. (*See* Dkt. 78.)

Based on the allegations contained in the Proposed Amended Complaint, Plaintiffs set out plausible claims for negligent supervision and negligent retention. Accordingly, Plaintiffs' motion will be granted as it relates to this claim.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, and for the reasons stated above **IT IS HEREBY ORDERED THAT**:

1. Plaintiff's Motion for Leave to Amend is **GRANTED IN PART** and **DENIED IN PART**.

2. The Motion is **GRANTED** as to Plaintiffs' claims for false light, defamation, intentional infliction of emotional distress, and negligent retention and supervision.

3. The Motion is **DENIED** as to Plaintiffs' claim for negligent infliction of emotional distress.

4. Plaintiff shall file an Amended Complaint within 14 days of this Order.

5. Defendants shall file their respective responses to Plaintiffs' Amended Complaint on or before May 19, 2025.

Dated: April 29, 2025

*S/Shannon G. Elkins*
SHANNON G. ELKINS
United States Magistrate Judge